# IN THE COURT OF APPEALS OF IOWA

No. 19-1451
Filed October 23, 2019

**IN THE INTEREST OF G.T.,**
**Minor Child,**

**B.C., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Kristy L. Hefel of Public Defender's Office, Dubuque, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and May, JJ.

**MAY, Judge.**

The juvenile court terminated the mother and father's parental rights to G.T. under Iowa Code section 232.116(1)(h) (2019). Only the mother appeals. She argues (1) grounds for termination were not established, (2) the juvenile court erred in denying her additional time, and (3) her bond with G.T. precludes termination. We affirm the juvenile court.

## I. Background Facts and Proceedings

G.T. was born in October 2017. The Iowa Department of Human Services (DHS) first took notice of G.T. in August 2018 after police investigated some domestic violence between G.T.'s parents. When police arrived, G.T. displayed concerning behavior. Paramedics were dispatched to the home.

At the hospital, G.T. tested positive for benzodiazepine and marijuana. The mother confessed that she fed G.T. sugar water and lollipops for the past four days because she could not afford formula. When G.T. was released from the hospital, he was placed in foster care.

Initially, visitations were scheduled with both parents together. Then the parents ended their relationship, and the mother moved into her own apartment. So DHS held separate visitations with each parent. After DHS inspected her home to ensure she had proper necessities for G.T., the mother progressed to overnight visits. But, shortly thereafter, her roof caved and she was unable to host overnight visits. Indeed, throughout this case, the mother struggled with maintaining stable housing and appropriate furnishings for G.T.

In March 2019, the mother had a psychological evaluation. During the evaluation, she admitted she kept a romantic relationship secret from DHS, she

was evicted for not paying rent, and she used marijuana about twice a month. The evaluation revealed the mother had a second-grade reading level and a third-grade oral-comprehension level. The psychologist opined that "there [are] significant intellectual, academic, and cognitive impairments for [the mother], which will have an impact on her being able to care for a young child."

Following the evaluation, DHS modified the mother's services. DHS asked her to get a substance-abuse evaluation and comply with its recommendations. An additional provider began helping the mother with setting goals, managing time, attending appointments, and more.

Despite these services, DHS continued to believe the mother was unable to properly care for G.T. The State filed a petition to terminate both parents' rights. Following a hearing in August 2019, the juvenile court terminated both parents' rights to G.T. under Iowa Code section 232.116(1)(h). The mother appeals.[1]

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, No. 14-1517, 2015 WL 791698, at *3 (Iowa Ct. App. Feb. 25, 2015) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

---

[1] The father does not appeal. This opinion only addresses the mother's arguments as to the termination of her rights.

### III. Analysis

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. We then consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.*

### A. Grounds for Termination

We first determine whether the State has proved grounds for termination under Iowa Code section 232.116(1). *Id.* at 472–73. The juvenile court found grounds for termination under Iowa Code section 232.116(1)(h). Section 232.116(1)(h) authorizes termination when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges the fourth element. She contends the juvenile court improperly relied on her failure to complete recommended substance-abuse treatment. She claims no evidence showed she continued to use marijuana "or that any use of marijuana posed an appreciable risk of harm to the child."

We disagree. At the beginning of this case, in August 2018, then nine-month-old G.T. tested positive for benzodiazepine and marijuana. *See In re J.M.*, No. 17-1197, 2017 WL 4570489, at *3 (Iowa Ct. App. Oct. 11, 2017) (noting a child testing positive for marijuana at the time of removal "could serve as a prior act showing an appreciable risk of danger to the child"). Then, in March 2019, the mother admitted to continued use of marijuana. Then, in May, the mother's hair tested positive for marijuana. In light of this history, the juvenile court was properly concerned with the mother's failure to obtain recommended substance-abuse treatment.

The mother also claims the juvenile court inappropriately determined she had made little progress. She contends the testimony of a family safety, risk, and permanency provider, shows she had progressed enough to resume care of G.T.

We read the record differently. The provider testified the mother was unable to understand the child's nutritional needs. When asked whether the mother "has the ability to meet all the child's needs even beyond what is basic for survival," the provider answered, "No." Also, she testified the mother was "unwilling to talk about the future" when discussing G.T. returning to the mother's care. She further testified the mother has not made arrangements to care for G.T. on a full-time basis, such as finding child-care services for when the mother is at work. In her own testimony, the mother conceded she had not made those arrangements.

We agree with the juvenile court that G.T. could not be returned to the mother at the time of the termination hearing.

As a fallback position, the mother suggests the juvenile court erred in declining to give her additional time for reunification.[2] Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

In the termination order, the juvenile court stated,

> In the present case, the parents have essentially already been granted an extension of time. Due to the child's age, the State could have sought permanency when the child was [six] months of age. However, services continued to be provided to the family for an additional [six] months and the child has now been out of parental care for over a year.
> Neither parent presented a clear plan to the court as to what steps they would be taking in order to ensure the need for removal will no longer exist after an extension of time.

We agree with the juvenile court. And we find an additional six months would not extinguish the need for removal. *See* Iowa Code § 232.104(2)(b). The first step of the three-part analysis is satisfied.

### B. Best Interests

Our next step is to consider the best interest of the child. *See id.* § 232.116(2). The mother does not raise an argument under this step. Based on our de novo review, however, we agree with the juvenile court that termination is in the child's best interest. The second step of the analysis is satisfied.

---

[2] The mother may also be arguing that DHS failed to provide reasonable efforts in the form of "services tailored to meet" the mother's "level of cognitive and intellectual functioning." No such claim was preserved because the mother never requested additional services. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the permanency or termination hearing or the issue is considered waived for appeal).

### C. Permissive Exceptions

Finally, we consider the exceptions under Iowa Code section 232.116(3). The parent bears the burden of proving an exception applies. *A.S.*, 906 N.W.2d at 476. If the parent proves an exception, this court *may* conclude termination is inappropriate. *Id.* We are not, however, *required* to reach that conclusion. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

Here, the mother claims her bond with G.T. precludes termination. Iowa Code section 232.116(3)(c) authorizes the juvenile court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

The juvenile court found "no evidence was presented to . . . indicate that maintaining a bond between the mother and child outweighs the benefits the child would receive from termination and adoption." We agree.

Although G.T. has a bond with his mother, she has been unable to meet his needs. Instead, G.T.'s foster family has been meeting his needs. That family is "very much" bonded to him. They intend to pursue adoption. So we conclude termination will not be detrimental to G.T. Instead, termination will free G.T. to find the permanency and safety he needs and deserves. *See D.W.*, 791 N.W.2d at 709 ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs."). The final step of the analysis is satisfied.

## IV. Conclusion

The juvenile court properly terminated the mother's parental rights.

**AFFIRMED.**